UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                              :

HEYWARD DOTSON,                                :

                                 :

                       Plaintiff,        :            11 Civ. 1126 (PAE)

                                 :

                 -v-                 :            <u>OPINION & ORDER</u>

                                 :

COURT SERGEANT "FNU" (FIRST NAME      :
UNKNOWN) FARRUGIA et al.,               :

                                 :

                     Defendants.      :

                                 :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      This case is before the Court on a motion to dismiss.  Plaintiff Heyward Dotson brings

this action against New York State officers Court Sergeant Charles Farrugia, Court Officer

William Chan, Court Officer Robert Philios, unknown state court officers John Does, and

unknown supervisory state court officers Richard Roes (the "State Defendants"), against the City

of New York, New York City officer Deputy Sheriff Kevin Sutack, unknown city officers Billie

Boes, and unknown supervisory city officers Larry Loes (the "City Defendants"), and against

Allied Barton Security Services, Allied Barton employees Angel Barbosa, Richard Cheng,

Joachim Kokenjak, Alex Menuau, Olufemi Adegoki, unknown Allied Barton employees Michael

Moes, and unknown Allied Barton supervisory employees Paul Poes (the "Allied Barton

Defendants").  Plaintiff brings claims against all individual defendants, sued in their individual

capacities, under 42 U.S.C. § 1983, for deprivation of his rights under the First, Fourth, and

Fourteenth Amendments.  Plaintiff sues the City of New York for violation of his constitutional

rights under a theory of *Monell* liability.  He sues Allied Barton for violation of his constitutional

[1]

rights and for various state law violations under a theory of *respondeat superior*, and also alleges negligent hiring.  He sues the individual Allied Barton Defendants for state law negligence.  He sues the individual State Defendants for state law claims, including assault and battery, false arrest and false imprisonment, abuse of process, violation of and retaliation for his state law right to free speech and association, trespass, intentional infliction of emotional distress, and negligence.  He sues all defendants for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") and the Rehabilitation Act, 5 U.S.C. § 790 *et seq.*, the New York State Constitution's guarantee of equal protection, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, as well as for constitutional tort.

The present complaint (the "Complaint") is plaintiff's second amended complaint, filed January 12, 2012.[1]  The City Defendants moved to dismiss on August 25, 2011, the State Defendants moved to dismiss on September 9, 2011, and the Allied Barton Defendants filed an answer on September 30, 2011.  Oral argument was held on November 10, 2011.

For the following reasons, plaintiff's claims against the City Defendants and the Allied Barton Defendants are dismissed in their entirety.  Plaintiff's claims against the State Defendants are also dismissed, with the exception of:  (1) plaintiff's § 1983 claim against the State Defendants for false arrest; (2) plaintiff's state law claim against the State Defendants for false arrest; (3) plaintiff's § 1983 claim against defendant Farrugia for excessive force; and (4) plaintiff's state law claim against defendant Farrugia for assault and battery, all of which survive.

---

[1] Defendants filed their motion to dismiss in response to plaintiff's first amended complaint, which was filed on August 5, 2011.  However, the only change plaintiff made in his second amended complaint was to add the individual Allied Barton Defendants to his negligence claim. This amendment has no bearing on the outcome of this decision, and thus the second amended complaint is treated as the controlling complaint.

[2]

I.      **Background**[2]

Plaintiff's claims arise from two separate incidents at two separate courthouses.  On September 19, 2008, plaintiff went to the New York State Supreme Court courthouse located at 111 Centre Street in Manhattan (the "state court") for a scheduled appearance in housing court (the "state court incident").  When plaintiff attempted to go through the magnetometer at the courthouse entrance, he set off the machine's alarm.  This happened repeatedly, as plaintiff later realized he had a sandwich wrapped in tin foil in his pocket.  Eventually, plaintiff successfully went through the magnetometer without setting off the alarm.  Upon doing so, he performed a "celebratory motion" that involved "slowly" moving his arms "in a circular motion in front of [his] chest."  At that point, defendant Farrugia arrested and handcuffed plaintiff, and then defendants Farrugia, Chan, and Philios brought him upstairs, held him in custody for approximately an hour and a half, questioned him, emptied his pockets and inquired as to whether the birdseed found therein was drugs, removed his shoes and socks, and lifted up his shirt.  Plaintiff alleges that during this time the handcuffs were excessively tight, and that he missed his housing court date due to the detention.  Plaintiff was charged with disorderly conduct under New York Penal Code § 240.20, and issued a summons that described his behavior as "disorderly and erratic" and "verbally defiant and extremely uncooperative," and stated that he had "yell[ed] and flail[ed] his arms—almost striking a member of the public."  The summons required plaintiff to appear in criminal court.

On January 26, 2009, plaintiff arrived at criminal court at 346 Broadway in Manhattan (the "criminal court") in order to address the summons issued to him as a result of the state court

---

[2] As this case is currently before the Court on a motion to dismiss, all facts in the plaintiff's Complaint must be taken as true.  The account of the underlying facts in this case is drawn from the Complaint.  Except where noted, no further citation to the Complaint will be made.

incident (the "criminal court incident").  The guards on duty included both city employees and employees of Allied Barton, with whom the city had contracted to provide courthouse security services.  At some point prior to his arrival at criminal court but after September 19, 2008, plaintiff had had a defibrillator implanted in his chest, which, plaintiff alleges, prevented him from proceeding safely through a magnetometer.  He related this information to one of the supervisory security guards at criminal court, whom he believes to have been either one of the Allied Barton individual defendants or defendant Sutack.  However, plaintiff alleges, the guard "told [him] to just get on the line and keep moving."  As plaintiff approached the magnetometer, he twice repeated to the guard that he "was not supposed to go through magnetometers due to his defibrillator," to which the guard told him to "move it along," and "insisted" that he go through the magnetometer.  All of these conversations took place within earshot of other court officers. Plaintiff proceeded through the machine, his defibrillator malfunctioned, and he fell to the floor. Courthouse personnel called for emergency medical services, who arrived and brought plaintiff to the emergency room; from there he was admitted to the hospital.

On March 30, 2009, plaintiff returned to criminal court on the disorderly conduct charge. Courthouse personnel remembered him from the prior criminal court incident; this time, plaintiff underwent a pat-down screening rather than proceeding through the magnetometer.  Plaintiff received an adjournment in contemplation of dismissal of the disorderly conduct charge.

## II.     Legal Standard on a Motion to Dismiss

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible only 'when the plaintiff pleads factual content

[4]

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Seidl v. Am. Century Cos.*, 427 F. App'x 35, 37 (2d Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1949). On a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, and draw all reasonable inferences in the plaintiff's favor; however, conclusory statements in a complaint are not assumed to be true. *See Seidl*, 427 F. App'x at 37. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949); *see also Harris v. Mills*, 572 F. 3d 66, 72 (2d Cir. 2009) ("although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The Court is to adjudge plausibility in context, and should "draw on its judicial experience and common sense." *Seidl*, 427 F. App'x at 37 (quoting *Iqbal*, 129 S. Ct. at 1950).

## III.     Discussion

### A.     The State Court Incident

Plaintiff brings multiple federal and state law claims against the State Defendants arising out of the state court incident. These claims are addressed in turn below.

#### i.     Section 1983 False Arrest

Plaintiff's first claim against the State Defendants is under 42 U.S.C. § 1983 for false arrest. In order to plead a claim brought pursuant to § 1983, a plaintiff must properly allege (1) that the defendant deprived him of a right guaranteed by the Constitution or laws of the United States and (2) that the defendant acted under color of law. 42 U.S.C. § 1983; *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

[5]

To plead a cause of action for false arrest under § 1983, a plaintiff must plausibly allege that: "(1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Richardson v. New York City Health & Hosps. Corp.*, No. 05-cv-6278, 2009 WL 804096, at *7 (S.D.N.Y. Mar. 25, 2009) (citing *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted). "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

Here, the plaintiff and the State Defendants disagree whether there was probable cause for plaintiff's arrest. In his Complaint, plaintiff alleges that the celebratory motion he performed upon successfully passing through the magnetometers was done "slowly, and with no conceivable danger or disruption to anyone." In the summons which was issued to plaintiff as a result of the state court incident, defendant Chan wrote that plaintiff was "disorderly and erratic in his behavior," that he "would not follow instructions in completing the magnetometer search," that he was "verbally defiant and extremely uncooperative," and that he "yell[ed] and flail[ed] his arms—almost striking a member of the public."

The State Defendants argue that, by quoting from the summons in his Complaint, plaintiff has incorporated the summons into the allegations of his Complaint, such that its allegations too must be taken as true at this stage of the case. The State Defendants are correct that, if the allegations set out in the summons were taken as true, and if there were no contrary

[6]

allegations in the Complaint, probable cause for the offense of disorderly conduct would be established.  However, plaintiff's Complaint affirmatively disputes the accuracy of the facts alleged in the summons.  And it is well settled that, "although the Court may properly consider the contents of a document in the context of a motion to dismiss, documentary evidence does not trump a plaintiff's contrary factual allegations."  *Vogelfang v. Capra*, No. 10-cv-3827, 2012 WL 832440, at *15 (S.D.N.Y. Mar. 13, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 510-511 (2d Cir. 2007)).  Therefore, plaintiff's version of events—not the version which appears in the quoted summons—must be taken as true at this stage of the litigation.  The Complaint denies that the facts alleged in the summons were truthful—it contends that plaintiff's only conduct preceding his arrest was his slow "celebratory motion" after clearing the magnetometer; without more, such conduct would not supply probable cause for an arrest.  Taking his allegation as true, plaintiff therefore plausibly challenges the State Defendants' probable cause to arrest plaintiff.  Accordingly, the motion to dismiss plaintiff's § 1983 claim based on false arrest must be denied.

### ii.       Section 1983 Use of Excessive Force

Plaintiff also brings a § 1983 claim against the State Defendants for use of excessive force.  "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

In his Complaint, plaintiff alleges that defendant Farrugia handcuffed him, and that the handcuffs were "excessively tight."  Plaintiff does not allege that he informed any of the State Defendants that the handcuffs were too tight.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Richardson*,

[7]

2009 WL 804096, at *10 (quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

Because plaintiff does not allege that any defendant other than Farrugia used excessive force

during the arrest, plaintiff's excessive force claim as to the other State Defendants is dismissed.

As to plaintiff's allegations regarding defendant Farrugia, it is true that excessively tight

handcuffing may constitute use of excessive force. *See Kerman v. City of New York*, 261 F.3d

229, 239-40 (2d Cir. 2001). Like all excessive force claims, the pivotal question is whether the

officer's behavior was objectively unreasonable in light of the circumstances. Taking all facts

alleged in plaintiff's Complaint as true, he is a frail, older man who was handcuffed after he did a

slow, whimsical motion with his arms, and he did not resist arrest or otherwise require

particularly forceful restraint. Assuming this description of events to be true, as the Court must

on a motion to dismiss, plaintiff's claim against defendant Farrugia for excessive force meets the

plausibility standard.

### iii.    Freedom of Speech and Association and Access to Courts

As part of his first claim, plaintiff alleges deprivation of and retaliation for his First

Amendment rights to freedom of speech and association, as well as violation of his right of

access to courts.

Plaintiff's Complaint does not allege that plaintiff uttered or was prevented from uttering

any pure speech. Rather, plaintiff's argument for violation of his First Amendment rights is

based on the circular motion he performed with his arms upon proceeding through the

magnetometer without incident. To be entitled to protection under the First Amendment,

conduct must be of a sufficiently expressive or associative nature to merit protection under free

speech law. *See Burt v. Gates*, 502 F.3d 183, 187 (2d Cir. 2007); *see also Rumsfeld v. Forum for

Academic and Inst. Rights, Inc.*, 547 U.S. 47, 65-66 (2006) (First Amendment protection

[8]

extended only to conduct "that is inherently expressive").  Here, however, the dance motion described by the plaintiff, without more, cannot rightly be described as "inherently expressive" such that a viewer would understand the speech being expressed, were there any.  Furthermore, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."  *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968).  Thus, even if it were the case that plaintiff's movement contained some minimal element of expressive or associative content, the governmental interest in maintaining order and public safety at the entrance to a courthouse is sufficiently important to justify State Defendants' behavior.  A reading of plaintiff's Complaint that draws all reasonable inferences in his favor is consistent with the conclusion that the government has an important interest in maintaining strict order at a courthouse entrance.

A First Amendment retaliation claim is premised upon the plaintiff pleading, with plausibility, that he "engaged in protected speech, and that the speech was a substantial or motivating factor in an adverse decision taken by the defendant."  *Bearss v. Wilton*, 445 F. App'x 400, 402 (2d Cir. 2011).  Here, because plaintiff does not plead with plausibility that he engaged in protected speech, his claim for First Amendment retaliation is likewise implausible, and must be dismissed.

In bringing an access to court claim under the First, Sixth, and/or Fourteenth Amendments, a plaintiff must plead "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim."  *Arar v. Ashcroft*, 585 F.3d 559, 592 (2d Cir. 2009) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002)).  Plaintiff's Complaint alleges that he

[9]

"missed his court date in Housing Court due to his arrest." Even taking the facts as alleged in the Complaint as true, however, plaintiff does not provide sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plaintiff's Complaint does not provide any information about the underlying claim at housing court, nor does he allege that relief in that matter has eluded him. His Complaint, taken as true, supports the conclusion only that plaintiff was unable to appear at housing court at a particular time on one particular day.

Plaintiff's claims for violation of and retaliation for his freedom of speech and association, as well as his access-to-court claim, are, therefore, dismissed as to the State Defendants.

### iv.      Section 1983 Supervisory Liability

Plaintiff's second claim alleges, *inter alia*, § 1983 supervisory liability against defendant Farrugia and unknown supervisory state court officers Richard Roes. The Complaint avers that these supervisors violated plaintiff's rights under § 1983 and the Constitution "[b]y failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates."

In the Second Circuit, in order to support liability under § 1983, a defendant must be personally involved in alleged constitutional deprivations. *Scott v. Fisher*, 616 F.3d 100 (2d Cir. 2010) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). In the case of a supervisor, personal involvement may be shown "through evidence that: . . . the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong [or] . . . the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The legal allegations contained in

plaintiff's Complaint parrot these evidentiary routes for supervisory liability.  However, plaintiff does not alleges a single fact relevant to these legal conclusions, let alone sufficient factual content to "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Seidl*, 427 F. App'x at 37 (quoting *Iqbal*, 129 S. Ct. at 1949).  Rather, plaintiff merely recites the legal elements of a successful § 1983 claim for supervisory liability.  This does not meet the plausibility pleading standard.  *See Harris*, 572 F. 3d at 72 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the plausibility standard).  Therefore, plaintiff's claim for § 1983 supervisory liability against defendant Farrugia and unknown supervisory state court officers Richard Roes is dismissed.

### v.     ADA and Rehabilitation Act

Plaintiff's sixteenth claim is for violation of his rights under the ADA and the Rehabilitation Act.  When brought together, claims under the ADA and the Rehabilitation Act are treated identically.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  To state a claim under these two acts, a plaintiff must plausibly allege that:  "(1) he is a qualified individual with a disability; (2) the defendants are subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities by reason of his disability."  *Lipton v. New York Univ. Coll. of Dentistry*, No. 11-cv-2535, 2012 WL 896210, at *4 (S.D.N.Y. Mar. 16, 2012).

Plaintiff's claim under the Acts must fail, because he does not allege any disability at the time of the state court incident, and therefore provides no basis upon which relief may be granted.  Therefore, plaintiff's claim for relief under the ADA and the Rehabilitation Act are dismissed as to the State Defendants.

[11]

### vi.    Assault, Battery, and Trespass

Plaintiff's sixth claim is a state law claim for assault and battery; his eleventh claim is a state law claim for trespass. "'Under New York law, trespass is the intentional invasion of another's property.'" *Town of New Windsor v. Avery Dennison Corp.*, No. 10-cv-8611, 2012 WL 677971, at *14 (S.D.N.Y. Mar. 1, 2012) (quoting *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996)). Nowhere in his Complaint does plaintiff allege invasion of his property by defendants; his claim is for trespass on his person. Under New York law, claims for trespass upon one's person are properly classified as battery. Therefore, plaintiff's claim for trespass is dismissed.

Courts interpreting New York state law of assault and battery as it applies to police officers have stated that "the essential elements of [§ 1983] excessive force and state law assault and battery claims are substantially identical." *Humphrey v. Landers*, 322 F. App'x 686, 688 (2d Cir. 2009). Because the Complaint contains factual allegations which render plaintiff's claim of excessive force plausible as to defendant Farrugia, *see* III.A.ii *supra*, so too must plaintiff's state law claim for assault and battery against the same defendant survive this motion to dismiss.

### vii.    False Arrest and False Imprisonment

Plaintiff's seventh claim is a state law claim for false arrest and false imprisonment. False arrest and false imprisonment are, under New York law, "two names for the same tort." *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 844-45 (3d Dep't 2011).

The elements of a false arrest claim under § 1983 are the same as those under New York law. *See Weyant*, 101 F.3d at 852; *Richardson*, 2009 WL 804096, at *7. Because the Complaint contains factual allegations which render plaintiff's § 1983 claim of false arrest against the State

[12]

Defendants plausible, *see* III.A.i *supra*, so too must plaintiff's state law claim for false arrest against the same defendants survive this motion to dismiss.

### viii.    Abuse of Process

Plaintiff's eighth claim is a state law claim for abuse of process.  In New York, "a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotations marks and citation omitted).

In support of his claim, plaintiff argues that the allegations contained in the summons issued to plaintiff by the State Defendants as a result of his arrest during the state court incident were "lies made to retaliate against the Plaintiff for his perceived affront, and to attempt to cover up the wrongdoing of the Court Officers in having arrested plaintiff."  These allegations, however, even if taken as true, do not support a claim for abuse of process, because they allege only an improper motive, "which is not actionable," rather than an "ulterior collateral purpose or objective," which may be.  *Rhodes v. Tevens*, No. 07-cv-471S, 2012 WL 777421, at *10 (W.D.N.Y. Mar. 7, 2012) (citing *Savino*, 331 F.3d at 77) ("the New York Court of Appeals has made clear that a malicious motive alone . . . does not give rise to a cause of action for abuse of process").  Here, plaintiff was handcuffed, arrested, and held in custody, and the disorderly conduct summons issued in his case was ultimately disposed of through an adjournment in contemplation of dismissal.  These facts indicate process used for its intended purpose—namely, to effectuate an arrest and subsequent prosecution—and do not support a claim for abuse of

process.  Because plaintiff fails to state a claim for abuse of process upon which relief can be

granted, his eighth claim is dismissed.

### ix.      Equal Protection Under State Law

Plaintiff's ninth claim is for violation of his right to equal protection under the laws and

Constitution of New York State.[3]  Plaintiff's Complaint contains no factual allegations that

render plausible his claim that the State Defendants violated his right to equal protection.

Rather, plaintiff makes the conclusory statement that, by the actions described in the Complaint,

"defendants violated plaintiff's rights to equal protection of law."  This "mere conclusory

statement[]" falls short of the plausibility pleading standard.  *Harris*, 572 F.3d at 72.  Plaintiff's

claim against the State Defendants for violation of his equal protection rights is dismissed.

### x.      State Free Speech and Association Rights

Plaintiff's tenth claim is for violation of and retaliation for the exercise of his free speech

and association rights under state laws and the New York State Constitution, Article I, § 8.  It is

true that the New York State Constitution "generally affords greater protection than the United

States Constitution with regard to speech."  *Rotundo v. Vill. of Yorkville*, No. 6:09-cv-1262, 2011

WL 838892, at *4 (N.D.N.Y. Mar. 4, 2011).  However, speech or, as the case may be here,

action, must still have an expressive or associative component to merit protection.  Plaintiff

alleges no facts which indicate the circular motion he performed with his arms upon passing

through the magnetometer without incident had any protected expressive or associative content,

---

[3] The Equal Protection Clauses of the United States and the New York Constitutions are
coextensive, and therefore an analysis under one equally supports an analysis under the other.
*See, e.g.*, *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 n.3 (2d Cir. 2007).
Although plaintiff's Complaint does not allege claims under the federal Equal Protection Clause,
to the extent he intended to raise them, this analysis would apply with equal force to any such
claims.

[14]

let alone expression sufficient to merit protection under the state constitution.  *See, e.g.*, *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.").

"[C]laims of free speech retaliation under Article I, section 8 of the New York State Constitution are governed by the same principles that apply under the First Amendment to the United States Constitution." *Rotundo*, 2011 WL 838892, at *4 n.8.  Therefore, the analysis in Section III.A.iii *supra*, applies in equal measure to plaintiff's state law free speech claims for retaliation.  Accordingly, plaintiff's state claims for violation of his free speech and free association rights and for retaliation for his exercise of free speech are dismissed as to the State Defendants.

### xi.    Intentional Infliction of Emotional Distress

Plaintiff's twelfth claim is for intentional infliction of emotional distress ("IIED").  Under New York law, "IIED requires pleading the following four elements:  (1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Magrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009) (internal quotation marks and citations omitted).  To meet the IIED standard of outrageousness, conduct must be "regarded as atrocious and utterly intolerable in a civilized society." *Id.* (internal quotation marks and citation omitted).  A court may decide "whether alleged conduct is sufficiently

outrageous as a matter of law." *Id*. (citing *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 324 (S.D.N.Y. 2008)).

Here, even taking as true the facts alleged in plaintiff's Complaint, the State Defendants' actions do not reach the level of outrageousness required to meet this high bar.  The State Defendants handcuffed and arrested plaintiff, detained him for approximately one hour, and issued a summons.  None of this behavior exceeds the "bounds of decency tolerated by society." *See Morse v. Spitzer*, No. 07-cv-4793, 2011 WL 4626004, at *14 (E.D.N.Y. Mar. 31, 2011) (Report & Recommendation) (plaintiff who was arrested and detained for eight hours did not have a plausible claim for IIED).

Furthermore, courts applying New York law "have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory." *Id*. at *15 (internal quotation marks and citations omitted).  Here, the fact that "the conduct comprising [plaintiff's] intentional infliction of emotional distress claim is encompassed entirely within his claim[] for false arrest" provides further support for dismissal of his IIED claim.  *Id*.

### xii.    Negligence

Plaintiff's thirteenth claim is for state law negligence.  Under New York law, the elements of a negligence claim are:  "(1) that the defendant owed [plaintiff] a duty of care; (2) that the defendant breached that duty; and (3) that the defendant's breach was the proximate cause of the plaintiff's injuries." *Stanback v. JPMorgan Chase Bank, N.A.*, No. 10-cv-4155, 2012 WL 847426, at *5 (E.D.N.Y. Mar. 13, 2012).

"New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution." *Paul v. Bank of Am. Corp.*, No. 09-cv-1932, 2011 WL

[16]

684083, at *3 (E.D.N.Y. Feb. 16, 2011).  Here, plaintiff attempts to "circumvent the well-established requirements of the false arrest . . . cause of action by inventing new theories of negligence."  *Jenkins v. City of New York*, No. 91-cv-3639, 1992 WL 147647, at *8 (S.D.N.Y. June 15, 1992); *see also Pandolfo v. U.A. Cable Sys.*, 171 A.D.2d 1013, 1014 (4th Dep't 1991). Plaintiff's claim for negligence is therefore more properly pled as a claim for false arrest, and his negligence claim against the State Defendants is dismissed.

### xiii.    State Constitutional Tort

Plaintiff's fifteenth claim is for constitutional tort under the New York State Constitution. This claim consists only of the conclusory assertion that defendants, "acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11 and 12 of the New York State Constitution."  Plaintiff does not allege specific facts to support these assertions, and to the extent the Court can attempt to map plaintiff's allegations in the Complaint onto the sections cited, the claims are duplicative of separately enumerated claims.  Plaintiff's claim for constitutional tort against the State Defendants therefore fails to state a claim upon which relief may be granted, and it is dismissed.

### xiv.    New York City Human Rights Law

Plaintiff's seventeenth claim is for violations of plaintiff's rights under the New York City Human Rights Law.  The Human Rights Law contains over 50 sections, and plaintiff does not plead allegations under any particular section, stating only that due to defendants' "misconduct, abuse of authority, and conspiracy with regard to the same," plaintiff was "deprived . . . of his liberty [and] suffered . . . [bodily, psychological, and emotional] injury."

Under the Human Rights Law, claims should be given "an independent liberal construction."  *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dep't 2009).  Yet,

[17]

even applying this standard to plaintiff's claims, and taking all facts asserted in his Complaint as true, there is insufficient factual evidence pled to create "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  To the extent plaintiff's Complaint implies discrimination by the State Defendants against plaintiff based on one of the Human Rights Law's protected categories—namely, "actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status"—the factual content of the Complaint does not render such an allegation plausible.  Plaintiff's claim against the State Defendants under the New York City Human Rights Law is dismissed.

### xv.   The State Defendants and the Criminal Court Incident

In his Complaint, plaintiff brings claims against the State Defendants for alleged injuries arising from both the state court incident and the criminal court incident.  Plaintiff does not claim that any State Defendants were present at the criminal court incident, or involved in a direct or supervisory capacity.  Rather plaintiff's theory of liability rests on the argument that *but for* the State Defendants' (allegedly improper) issuance of the summons during the state court incident, plaintiff would not have come to criminal court, and the criminal court incident would not have occurred.  Even taking plaintiff's allegations regarding both incidents as true, State Defendants are not the proximate cause of the criminal court incident.

In order for one event to be the proximate cause of another, the second event must be "'a normal or foreseeable consequence'" of the first.  *Food Holdings Ltd v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (quoting *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (N.Y. 1980)).  Proximate cause is lacking where the second event was instead "'extraordinary under the circumstances, not foreseeable in the normal course of events, [and]

[18]

independent of or far removed from'" the first.  *Food Holdings Ltd.*, 423 F. App'x at 76 (quoting *Derdiarian*, 51 N.Y.2d at 315).  Here, plaintiff's acquisition of a defibrillator and the independent actions of the City Defendants and the Allied Barton Defendants constituted "independent intervening acts which operate[d] upon but d[id] not flow from" the conduct of the State Defendants, thereby disrupting the causal chain.  *Food Holdings Ltd.*, 423 F. App'x at 76 (quoting *Derdiarian*, 51 N.Y.2d at 315).  The two incidents are independent, as are the actors involved.  The State Defendants cannot be held legally responsible for what occurred when plaintiff went to criminal court, and therefore all claims against the State Defendants arising from the criminal court incident are dismissed as to the State Defendants.

**B.     The Criminal Court Incident**

Plaintiff brings multiple federal and state law claims against the City Defendants and the Allied Barton Defendants arising out of the criminal court incident.  These claims are addressed in turn below.

**i.     Fourth Amendment Unlawful Seizure**

Plaintiff's first claim is, *inter alia*, a § 1983 claim predicated on unlawful seizure under the Fourth Amendment.  He alleges that the City Defendants and the Allied Barton Defendants, in having him proceed through the magnetometer at criminal court after he informed them that he could not go through due to his defibrillator, which subsequently malfunctioned, executed an unlawful seizure.

The Fourth Amendment proscribes unreasonable searches and seizures by the government.  U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  "'[T]he first step in any Fourth Amendment claim (or, as in this case, any section 1983 claim predicated on the Fourth Amendment) is to determine whether there has been a constitutionally cognizable

[19]

seizure.'"  *Barlow v. Male Geneva Police Officer Who Arrested Me on January 2005*, 434 F.

App'x 22, 25 (2d Cir. 2011) (quoting *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998)).

"A person is seized by the police and thus entitled to challenge the government's action under

the Fourth Amendment when the officer, by means of physical force or show of authority

terminates or restrains his freedom of movement *through means intentionally applied*."  *Brendlin*

*v. California*, 551 U.S. 249, 254 (internal quotations marks and citations omitted) (emphasis in

original); *see also Terry*, 392 U.S. at 19 n.16 ("Obviously, not all personal intercourse between

policemen and citizens involves 'seizures' of persons. Only when the officer, by means of

physical force or show of authority, has in some way restrained the liberty of a citizen may we

conclude that a 'seizure' has occurred.").  Here, plaintiff alleges no physical contact or restraint

by the defendants, so the relevant inquiry here is "whether 'a reasonable person would feel free

to decline the officers' requests or otherwise terminate the encounter.'"  *Id*. at 255 (quoting

*Florida v. Bostick*, 501 U.S. 429, 435-36 (1991)).

Here, even accepting all of plaintiff's allegations in the Complaint as true, the totality of

the circumstances demonstrates that a reasonable person would have felt free to leave in

plaintiff's situation, and thus plaintiff was not seized.  In his Complaint, plaintiff alleges that, in

response to his statements about his defibrillator, a criminal court officer told him to "keep on

moving," to "move it along," and to "continue through the magnetometer."  In context, it is

apparent that a reasonable person would not have understood these statements to mean that he

had no choice but to walk through the magnetometer, but only that, if he wanted to enter the

courthouse, that was the way in which to do so.  Plaintiff does not allege that defendants blocked

the exit to the courthouse or prevented plaintiff from leaving the line.  *Contra U.S. v. Simmons*,

560 F.3d 98, 106 (2d Cir. 2009) (individual seized when he stopped after officers instructed him

to stop and blocked exit doors).  Nothing in plaintiff's complaint indicates that the criminal court officers coerced him by, for example, displaying any weaponry, physically touching him, or using a threatening or aggressive language or tone.  *See U.S. v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990) ("Factors which might suggest a seizure therefore include: the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.").  As nothing in plaintiff's Complaint plausibly suggests that a reasonable person would not have felt free to leave the criminal court line, plaintiff does not state a claim for illegal seizure, and his § 1983 claim predicated on a Fourth Amendment violation must be dismissed as to the City Defendants and the Allied Barton Defendants.

### ii.    Access to Courts

Plaintiff's first claim is for, *inter alia*, denial of access to courts in violation of his First, Sixth and/or Fourteenth Amendments.  A plaintiff alleging an access-to-court violation must plead facts showing "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim."  *Arar*, 585 F.3d at 592 (quoting *Harbury*, 536 U.S. at 415-16).

The Complaint alleges that, on January 26, 2009, the date of the criminal court incident, plaintiff was unable to attend court in response to his summons, because he instead had to go to the hospital after proceeding through the magnetometer.  Plaintiff also states, however, that he returned to criminal court on March 30, 2009, at which time he resolved the summons by way of an adjournment in contemplation of dismissal.  Taking all facts alleged in the Complaint as true,

it is evident that there is no continued inability to resolve the case, as the case was resolved on March 30, 2009.  Therefore, plaintiff's claim against the City Defendants and the Allied Barton Defendants for denial of access to courts must be dismissed for failure to state a claim upon which relief may be granted.

> **iii.    Section 1983 Supervisory Liability, Municipal Liability, and Section 1983 *Respondeat Superior* Liability**

In his second, third, and fourth claims, plaintiff alleges, respectively, § 1983 supervisory liability against defendant Sutack, unknown supervisory city officers Larry Loes, and unknown supervisory Allied Barton employees Paul Poes, *Monell* liability against defendant the City of New York, and § 1983 *respondeat superior* liability against defendant Allied Barton.

To plead supervisory liability for constitutional deprivations, a plaintiff must first properly plead the underlying constitutional deprivation.  *See, e.g.*, *Colon*, 58 F.3d at 873 (noting that the first step in finding § 1983 supervisory liability is finding an underlying constitutional violation).  Here, as discussed in Sections III.B.i and III.B.ii *supra*, plaintiff has failed to do this.  Therefore, plaintiff's § 1983 supervisory liability claim against defendant Sutack, unknown supervisory city officers Larry Loes, and unknown supervisory Allied Barton employees Paul Poes must be dismissed.

"To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Zherka v. City of New York*, No. 10-5059-cv, 2012 WL 147914, at *1 (2d Cir. Jan. 19, 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)) (internal quotations marks and additional citations omitted).  Here, as discussed in Sections III.B.i and III.B.ii *supra*, plaintiff fails to

[22]

plausibly plead denial of a constitutional right.  Therefore, plaintiff's § 1983 claim against the City of New York must be dismissed.

Before setting out to plead and show that an employer should be held liable for the wrongful acts of its employees through the theory of *respondeat superior*, a plaintiff must first plead and show underlying wrongful acts by those whose conduct is being imputed to another. *See, e.g.*, *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (the first step in showing *respondeat superior* liability is showing the underlying wrongful act).  As noted in Sections III.B.i and III.B.ii *supra*, plaintiff's Complaint does not properly plead a constitutional violation during the criminal court incident.  Therefore, plaintiff's § 1983 *respondeat superior* claim against Allied Barton must be dismissed.

### iv.    ADA and Rehabilitation Act

Plaintiff's sixteenth claim is for violation of his rights under the ADA and the Rehabilitation Act.  When brought together, claims under the ADA and the Rehabilitation Act are treated identically.  *Henrietta D.*, 331 F.3d at 272.  To state a claim under the Acts, the plaintiff must plausibly allege that:  "(1) he is a qualified individual with a disability; (2) the defendants are subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities by reason of his disability."  *Lipton*, 2012 WL 896210, at *4.

The ADA defines a "disability" as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

Plaintiff does not explicitly allege a disability, as defined in the ADA.  Plaintiff merely notes that, prior to the criminal court incident, he "had recently gotten a defibrillator implanted in

[23]

his chest."  The Complaint does not, however, plausibly allege that plaintiff has a disability that limits one of more of his major life activities; indeed, it alleges no facts at all surrounding plaintiff's eligibility to state a claim under the two Acts.  Pleading an inability to pass through a magnetometer safely, which plaintiff does do, is not tantamount to pleading a disability that substantially limits a major life activity; indeed, plaintiff acknowledges that safe alternatives to a magnetometer (*e.g.*, a pat-down screening) readily exist.  For this reason, plaintiff's claim against the City Defendants and the Allied Barton Defendants for violation of his rights under the ADA and the Rehabilitation Act is dismissed for failure to state a claim.

### v.   State Law Claims

As discussed in Section III.A.xv *supra*, the state court incident and the criminal court incident are legally distinct occurrences, which give rise to separate sets of claims.  The Court has dismissed plaintiff's federal law claims against the City Defendants and the Allied Barton Defendants. [4]  With no federal claims remaining against the City Defendants and the Allied Barton Defendants, the Court declines to exercise supplemental jurisdiction over the state law claims against these defendants.  *See* 28 U.S.C. § 1367(c)(3).  Therefore, the Court dismisses plaintiff's state law claims against these defendants for violation of plaintiff's right to equal protection under state law, constitutional tort, and violations under the New York City Human Rights Law, as well as plaintiff's claims against the Allied Barton Defendants for *respondeat superior* liability for state law violations, negligence, and negligent hiring.

---

[4] The Allied Barton Defendants, inexplicably, did not move to dismiss, or to join the City Defendants' motion to dismiss.  However, in response to questioning at oral argument, plaintiff conceded that, as to the federal claims relating to the criminal court incident, the legal analysis applicable to the City Defendants equally applied to the Allied Barton Defendants.  The Court's independent review confirms that there is no basis to sustain the federal claims against the Allied Barton Defendants.

[24]

## CONCLUSION

For the foregoing reasons, plaintiff's claims against the City Defendants and the Allied Barton Defendants are dismissed in their entirety.  Plaintiff's claims against the State Defendants are also dismissed, with the exception of:  (1) plaintiff's § 1983 claim against the State Defendants for false arrest; (2) plaintiff's state law claim against the State Defendants for false arrest; (3) plaintiff's § 1983 claim against defendant Farrugia for excessive force; and (4) plaintiff's state law claim against defendant Farrugia for assault and battery, all of which survive.

The Clerk of Court is instructed to terminate the motions pending at docket entries number 20 and 22.

No later than April 2, 2012, the parties shall submit a proposed case management plan for the Court's approval.  A pretrial conference in this matter is scheduled for April 5, 2012, at 4:00 p.m. at the U.S. Courthouse, 500 Pearl Street, New York, New York 10007.


SO ORDERED.

_Paul A. Engelmayer_

_____
Paul A. Engelmayer
United States District Judge


Dated: March 26, 2012
       New York, New York

[25]